**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAWRENCE COX, | ) | |
| | ) | Case No. 16 C 561 |
| Plaintiff, | ) | |
| | ) | Hon. Virginia M. Kendall |
| v. | ) | |
| | ) | |
| CALUMET PUBLIC SCHOOLS DISTRICT 132 and ELIZABETH REYNOLDS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lawrence Cox filed this five-count complaint against Calumet Public Schools District 132 and the School District's Superintendent, Elizabeth Reynolds, for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.); violation of the Illinois Wage Payment and Collection Act (820 Ill. Comp Stat. 115/1); and Illinois state law claims for breach of contract, defamation, and tortious interference with contract. Defendants now move to dismiss all five counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 10). For the reasons set forth below, the Court grants Defendants' motion in part and denies the motion in part.

**BACKGROUND**[1]

Cox was hired by the School District in July 2011 to serve as the District Administrator for Logistics and Technology. (Dkt. No. 1, ¶ 10). Cox worked pursuant to a written contract, which was renewed annually until his discharge on January 16, 2015. (*Id.*) In November 2014, Defendant Reynolds asked Cox to participate in an internal investigation of a charge filed against

[1] This Court takes all facts alleged in the Complaint as true for the purposes of this motion. *See Vinson v. Vermilion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).

the School District by one of its female employees with the Equal Employment Opportunity Commission. (*Id*. at ¶ 12). Cox met with the School District's attorney and provided information in response to the attorney's requests. (*Id*.)

In the course of the internal investigation, Cox was accused of having sexually harassed the female employee who had filed the EEOC charge against the School District. (*Id*. at ¶ 13). Despite Cox's denial of the allegations, Reynolds recommended Cox be suspended on November 20, 2014. (*Id*. at ¶ 14). On December 18, 2014, Reynolds suspended Cox without pay based on "a laundry list of false allegations claiming that Plaintiff committed misconduct in the workplace." (*Id*. at ¶ 15). About a month later, on January 16, 2015, Cox was discharged. (*Id*. at ¶ 17). Cox maintains that, prior to his participation in the internal investigation, he was never warned about any misconduct and was ranked above average in several categories on his October 2014 performance evaluation. (*Id*. at ¶ 16). Cox timely filed a charge of discrimination with the EEOC, claiming he was discriminated against based on his sex. This suit followed.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint

must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## DISCUSSION

### I. Sex Discrimination and Retaliation Claims under Title VII

The School District maintains that Cox failed to allege that he was meeting his employer's legitimate expectations or that similarly-situated persons not in his protected class were treated more favorably than he was and therefore the case must be dismissed. The School District further maintains that Cox did not participate in a protected activity under Title VII's anti-retaliation statute.

"A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his] sex.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). "The plaintiff is not required to include allegations—such as the existence of a similarly-situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Id*. While "a complaint must contain something more than a general recitation of the elements of the claim," there is a "minimal pleading standard for simple claims of race and sex discrimination." *Tamayo*, 526 F.3d at 1081 (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007)).

Proof of discrimination may ultimately require the plaintiff to establish a prima facie case of discrimination before the burden shifts to the defendant to demonstrate a permissible and nondiscriminatory reason for the adverse employment action; reverse discrimination, as is

alleged here, may also involve a showing of background circumstances that demonstrate the employer has a reason or inclination to discriminate against a majority group. *See, e.g., McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). However, "the evidentiary burden a Title VII plaintiff must *eventually* meet to prevail differs from the pleading standards for a motion to dismiss." *See, e.g., Wyss v. Compact Indus., Inc.*, No. 13 C 5135, 2014 WL 960846, at *2 (N.D. Ill. Mar. 12, 2014); *Vega v. Chicago Park Dist.*, 958 F. Supp. 2d 943, 953, 2013 WL 3866514, at *6 (N.D. Ill. July 25, 2013) ("[Defendant] has spent a better part of his Motion to Dismiss and Reply ... arguing that [the plaintiff] has failed to make a 'similarly situated' argument.... However, the 'similarly situated' argument is an evidentiary standard applicable at the summary judgment stage; it is not a requirement in reviewing the sufficiency of the complaint."); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement.... This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). Cox is merely at the pleading stage where the requirements in the sex discrimination context are minimal; his allegations are sufficient to state claims under Title VII for sex discrimination. *See Tamayo*, 526 F.3d at 1084 (confirming minimal pleading standard for simple claims of race or sex discrimination).

Similarly, with respect to his retaliation claim, Cox need only "allege that [he] engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *See Carlson*, 758 F.3d at 828 (internal quotation marks and citation omitted). Cox's alleged participation in the School District's internal investigation regarding the EEOC charge against it is plausibly set forth in the Complaint as a statutorily protected activity. *See, e.g., Gomez v.*

*Restaurant One Ltd. Partnership*, No. 10 C 1850, 2012 WL 2325667, at *2 (N.D. Ill. June 19, 2012) (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) ("we hold that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge"); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999) ("we recognize that, at least where an employer conducts its investigation in response to a notice of charge of discrimination, and is thus aware that the evidence gathered in that inquiry will be considered by the EEOC as part of its investigation, the employee's participation is participation 'in any manner' in the EEOC investigation"); *Gilooly v. Mo. Dep't of Health and Senior Servs.*, 421 F.3d 734, 744 n. 4 (8th Cir. 2005) (noting in dicta that it is "likely" in agreement with the Sixth and Eleventh Circuits)); *compare Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010) (taking no position on whether "participation in an internal investigation begun after a charge is filed with the EEOC should be treated as participation in the official investigation…"). That Cox was the target of the investigation does not lessen the protections of participating in an investigation. Of course, Cox is not protected from any and all conduct that comes out of an investigation. *See id*. (noting in dicta that an individual participating in an investigation is not shielded from, for example, forging documents and coercing witnesses to give false testimony in the course of the investigation). However, that does not mean he is unprotected from a retaliatory discharge based merely on truthful participation in the investigation. At this early stage, Cox has plausibly alleged that he engaged in a protected activity. The School District's motion to dismiss Cox's Title VII sex discrimination and retaliation claims is denied.

**II. Breach of Contract**

Under Illinois law, "[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759 (1st Dist. 2004)). The School District claims that Cox failed to allege that its "findings were unreasonable" and that he failed to allege a breach of contract. Neither argument is availing. First, whether the School District's conduct was "unreasonable" is irrelevant to the survival of Cox's breach of contract claim at this early stage of litigation. Second, Cox clearly alleges that the breach of contract occurred when the School District fired him without cause, in violation of the provision stating that firing must be for cause. *See* Dkt. No. 1, ¶¶ 31, 35; *see also, e.g., Axiom Ins. Managers, LLC v. Indem. Ins. Corp.*, No. 11 C 2051, 2011 WL 3876947, at *12 (N.D. Ill. Sep. 1, 2011) ("A plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim.") (*citing, e.g., Deliver Med Holdings, LLC v. Schaltenbrand*, No. 10–CV–684, 2011 WL 2134343, at *8 (S.D. Ill. May 27, 2011) ("Despite its lack of specifics about the terms of the alleged promises made by the Medicate Parties, Count VI adequately pleads a breach of contract claim .... The complaint describes each theory with enough detail to alert the Medicate Parties to what the claims are and the grounds on which they rest.... Plausibility simply means that there are 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's claims.") (quoting *Twombly*, 550 U.S. at 556); Pa. *Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09–CV–5619, 2011 WL 1626546, at *2 (N.D. Ill. Apr. 28, 2011) ("Under ordinary circumstances, the Court likely would not require a party making a breach of contract claim to

identify the contractual terms on which it relies; alleging the nature of the breach would be enough."). Cox has stated a claim for breach of contract and the School District's motion to dismiss Count II is denied.

**III. Illinois Wage Payment and Collection Act**

Under the Illinois Wage Payment and Collection Act, wages and salaries owed to a separated employee pursuant to an employment contract are defined as "final compensation." 820 ILCS 115/2. Such compensation, however, need not be paid where an employee is terminated for cause. *See Eakins v. Hanna Cylinders, LLC*, 2015 IL App (2d) 140944, ¶ 31 (citing *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 9) (also reasoning that, after termination, "final compensation" cannot be owed because the employer is no longer receiving anything in exchange for that compensation). Defendants maintain that Cox's IWPCA claim must be dismissed because in cases where, as here, there is a question as to whether an employee was terminated for cause, unpaid future compensation pursuant to a terminated contract does not fall under the Act's definition of final compensation. (*See* Dkt. No. 12, 7). Cox concedes this point, seeks to withdraw his claim under the IWPCA for unpaid future salary, and moves for leave to amend his complaint. (*See* Dkt. No. 15, 10). The Court grants him leave to do so.

**IV. Defamation Per Se**

Cox alleges defamation in  Count IV against both the School District and Reynolds. To plead a claim for defamation under Illinois law, a plaintiff must allege that (1) defendants made a false statement about the plaintiff; (2) publication of the defamatory statement was not privileged; and (3) the plaintiff was damaged as a result. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). Cox appropriately concedes in his Response that the School

District is immune from defamation liability under the Illinois Tort Immunity Act, 745 ILCS 10/2-107. He maintains, however, that Reynolds is not afforded that same immunity under the Act under the circumstances alleged here. Section 2-210 provides:

> A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

With regard to individual public employees accused of defamation, "even if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority." *See Horwitz v. Board of Educ. of Avoca School District No. 37*, 260 F.3d 602, 617 (7th Cir. 2001) (internal quotation marks omitted) (citing *Klug v. Chicago Sch. Reform Bd. of Trs.*, 197 F.3d 853, 861 (7th Cir. 1999) ("even if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority")); *see also Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111-112 (1st Dist. 2011) (holding that public school employees acting within the scope of their employment are immune from defamation claims, citing the Tort Immunity Act provision that provides immunity to public employees for injuries caused as a result of the oral or written provision of information (745 ILCS 10/2-210)).

Cox alleges that "[a]t all times relevant hereto, REYNOLDS was CALUMET'S Superintendant of Schools." (Dkt. No. 1, ¶ 4). With respect to the allegedly defamatory statements, he claims that "Defendants communicated the fact that Plaintiff was discharged for cause to third parties." (Dkt. No. 1, ¶ 45). The Complaint does not contain any facts that would support an inference that Reynolds was acting outside of her official authority when she communicated to third parties that Cox was discharged for cause. On the contrary, Cox fails to distinguish between Reynolds and the School District in his defamation count; and, his failure to

do so leads to the clear inference that both Reynolds and the School District were acting in their official capacity, within the scope of their authority, when they conveyed to third parties that Cox was discharged for cause. Count IV is dismissed against Reynolds without prejudice.

**V. Tortious Interference**

To state a claim under Illinois law for tortious interference with a contract, a plaintiff must demonstrate:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Thus, to adjudicate a tortious interference claim, a court must determine if a breach of the relevant contract has actually occurred. Under Illinois law, this determination is one of fact, in which the factfinder must interpret the relevant contract terms and analyze the actions of the party accused of breaching vis-à-vis these contract terms. Therefore, to adjudicate a tortious interference claim under Illinois law, a court must interpret the relevant contract.

*See Healy v. Metro. Pier and Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (internal citations omitted). One caveat to this law is that "an entity cannot be liable in tort for interfering with its own contract. To be tortious, the interference must come from an entity not a party to the contract." *See Knickman v. Midland Risk Services–Illinois, Inc.*, 298 Ill. App. 3d 1111 (4th Dist. 1998); *see also Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 726 (7th Cir. 2000).

The parties do not appear to dispute that Reynolds, as the Superintendant, was acting as an agent of the School District when she suspended and discharged Cox. Once that agency relationship has been established, "thereby creating a conditional privilege, the plaintiff bears the burden of pleading the defendant's conduct lacked justification or was done with malice." *See, e.g., Garden Denver, Inc. v. Nat'l Indemnity Co.*, 2015 IL App (4th) 140713-U, at ¶ 25, 2015 WL 2454059, at *4. In the contractual relationship context, malicious "simply means that the interference must have been intentional and without justification." *See id*. (quoting *HPI Health*

*Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 156 (1989)). The agency privilege does not extend to "bad-faith conduct engaged in by the defendant solely for its own benefit or for the sole purpose of harming the plaintiff." *See id*.

The contract at issue was between the School District and Cox. Reynolds, as the Superintendent, was acting as an agent of the School District and acted on its behalf. A claim against Reynolds is tantamount to a claim against the School District. *See Fiumetto v. Garrett Enter., Inc.*, 321 Ill. App. 3d 946 (2nd Dist. 2001). As such, the claim against her must be dismissed unless Cox has sufficiently alleged that Reynolds induced the breach of contract contrary to the best interest of the School District. *See, e.g., Lombardi v. Bd. of Trs. Hinsdale Sch. Dist. 86*, 463 F. Supp. 2d 867, 873 (N.D. Ill. 2006) (dismissing tortious interference claim against agents of the school board); *Siakpere v. Boucher*, No. 84-C-6768, 1986 WL 5657, at *6 (N.D. Ill. May 7, 1986); *see also, e.g., Garden Denver, Inc.*, 2015 IL App (4th) 140713-U, at ¶ 25.

Cox alleges that, despite meeting the School District's expectations, he was targeted by Reynolds, suspended, and eventually discharged based "on a laundry list of false allegations." (*See* Dkt. No. 1 at ¶ 15). Cox specifically alleges that it was Reynolds that both suspended and discharged him. (See Dkt. No. 1 at ¶¶ 15, 17). If Cox was a good employee, then an effort to discipline or fire him was contrary to the best interests of the corporation. It follows that if Reynolds engaged in such conduct, she was not furthering the best interests of her employer and was acting instead to further her own personal goals. *See, e.g., Siakpere*, 1986 WL 5657, at *6 ("a trier of fact could infer that [defendant-employer] lost sight of the best interests of the corporation when he sought to get a valued employee fired") (citing *Kufalk v. Hart*, 610 F. Supp. 1178 (N.D. Ill. 1985)). Thus, even under the heightened pleading requirements applied in light of

the plausibly applicable privilege, Cox has stated a claim for tortious interference with employment expectancy. Defendants' Motion to Dismiss Count V is denied.

**VI. Punitive Damages**

Finally, the Defendants move to strike Cox's prayers for punitive damages in Count I, IV, and V of his Complaint. With respect to Count I, Cox concedes he is not entitled to punitive damages for his Title VII claim as currently pled. He seeks leave to amend Count I and that leave is granted. Count IV has already been dismissed under Rule 12(b)(6). With respect to Count V, Cox's punitive damages claim will survive for now. The Illinois Tort Immunity Act provides:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102. However, as with Reynolds' claimed immunity with respect to the tortious interference with a contract claim asserted in Count V, it is too early to tell definitively whether she was acting in her official capacity for the benefit of the School District when engaging in the alleged misconduct. Therefore, the claim for punitive damages with respect to the tortious interference claim against Reynolds stands for now. *See, e.g., Lifton v. Bd. of Educ. of City of Chicago*, 290 F. Supp. 2d 940, 946 (N.D. Ill. 2003) (allowing punitive damages claim to proceed past motion to dismiss stage where too early to tell whether immunity would absolve individual from alleged violation of Section 1983).

**CONCLUSION**

For the reasons stated, Defendants' Motion to Dismiss [10] is granted in part and denied in part. Plaintiff is granted leave to file an amended complaint on or before May 2, 2016.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/18/2016